UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Lynne Winner and Destiny Jennings, *on their own behalf and on behalf of all others similarly situated*,

                        Plaintiffs,

v.

Kohl's Department Stores, Inc.,

                        Defendant.

Civil Action No.: _____

**CLASS ACTION COMPLAINT**

For this Class Action Complaint, Plaintiffs, Lynne Winner and Destiny Jennings, by and through their undersigned counsel, pleading on their own behalf and on behalf of all others similarly situated, state as follows:

## INTRODUCTION

1. Plaintiffs, Lynne Winner and Destiny Jennings ("Plaintiffs"), bring this class action for damages resulting from the illegal actions of Kohl's Department Stores, Inc. ("Kohl's"). Kohl's sent unauthorized text messages to Plaintiffs' cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

1

3. Kohl's is a nationwide department store retail chain. It has developed a sophisticated multi-platform marketing program to promote its products and stores.

4. Among those platforms used and targeted, are consumers mobile cellular telephone devices to which Kohl's sends Short Message Service ("SMS" or "Text") messages promoting sales, offers and Kohl's services.

5. Kohl's did not provide consumers clear and conspicuous disclosure of the consequence of providing it their telephone number, *i.e.* that the consumer agrees unambiguously to receive automated texts messages from or on behalf of Kohl's.

6. Moreover, Kohl's wholly disregards consumers' requests for its text messages to stop. Indeed, Kohl's continues to send consumers its text messages even after they text Kohl's to "STOP" as instructed in Defendant's text messages.

7. The telemarketing messages were sent to consumers' cell phones by or on behalf of Kohl's using a fully automated system. The messages were unauthorized and not sent for emergency purposes. Accordingly, the text messages sent by Kohl's violated the TCPA.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because one of the Plaintiffs resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

10. Plaintiff Lynne Winner (hereafter "Ms. Winner") is, and at all times mentioned herein was, an adult individual residing in Collegeville, Pennsylvania, and is a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff Destiny Jennings (hereafter "Ms. Jennings" and together with Ms. Winner, "Plaintiffs") is, and at all times mentioned herein was, an adult individual residing in Jacksonville, Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

12. Kohl's is a Delaware business entity with a principal place of business at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

14. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called.

15. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
(B) to dial such numbers.

16. In 2015, the FCC reaffirmed its long standing position on the definition of ATDS:

> Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so.58 Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

*FCC Declaratory Ruling and Order*, FCC 15-72, ¶ 15 (July 10, 2015).

17. "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200; *see also FCC Declaratory Ruling and Order*, FCC 15-72, ¶ 98 (July 10, 2015).

18. The FCC has also clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *restated in FCC Declaratory Ruling and Order*, FCC 15-72, ¶ 116, n. 395 (July 10, 2015).

## FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFF JENNINGS AND ALL COUNTS

19. Kohls has been sending Plaintiff Jennings text messages to her cellular telephone number 904-xxx-8298.

20. The messages were so called "KohlsALERTS" and set forth, for example:



21. The texts were telemarketing. They advertised sales and promotions available at Kohl's retail stores and on its website.

22. The texts were part of Kohl's Direct Marketing Strategy.

23. The text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to thePlaintiff.

24. The text messages sent to Plaintiff's cellular phones were made with an ATDS. The ATDS has the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, or from a database of numbers, and to text thousands of such numbers without human intervention.

25. Kohls did not have Plaintiff's prior express written consent to send her the text messages.

26. Moreover, Plaintiff responded to Defendant's texts with the message "STOP" to cancel the texts but the Defendant continued to send the messages.

27. The text messages have annoyed and harassed the Plaintiff and invaded her privacy by sending unwanted messages to her cellular device.

### FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFF WINNER AND ALL COUNTS

28. Kohls has been sending Plaintiff Winner text messages to her cellular telephone number 610-XXX-2274.

29. The messages were the same so called "KohlsALERTS" and set forth, for example:

> KohlsALERTS: TEXT EXCLUSIVE! Get 20% off your purchase, today only. Shop online w/code TAKE20 or in store w/pass: http://bit.ly/1ovXhii. Text STOP to cancel.

(March 14, 2016).

30. The texts were telemarketing. They advertised sales and promotions available at Kohl's retail stores and on its website.

31. The texts were part of Kohl's Direct Marketing Strategy.

32. The text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to thePlaintiff.

33. The text messages sent to Plaintiff's cellular phones were made with an ATDS.The ATDS has the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, or from a database of numbers, and to text thousands of such numbers without human intervention.

34. Kohls did not have Plaintiff's prior express written consent to send her the text messages.

35. Moreover, Plaintiff responded to Defendant's texts with the message "STOP" to cancel the texts but the Defendant continued to send the messages.

36. The text messages have annoyed and harassed the Plaintiff and invaded her privacy by sending unwanted messages to her cellular device.

## CLASS ACTION ALLEGATIONS

### A. The Class

37. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of each of themselves and all others similarly situated.

38. Plaintiffs represent, and are members of the following classes:

**Class 1:All persons within the United States who did not provide Defendant clear and conspicuous prior express written consent to send automated "KohlsALERTS" telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four years prior to the filing of the Complaint.**

**Class 2: All persons within the United States who, after notifying Defendant to stop the "KohlsALERTS" messages, received one or more text messages,**

7

**from or on behalf of Defendant, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four year prior to the filing of the Complaint.**

39. Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes, but believe the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

## B. Numerosity

40. Upon information and belief, Defendant sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent or after the consumers told it to stop. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

41. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C. Common Questions of Law and Fact

42. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Defendant sent text messages to Plaintiffs and Class members' cellular telephones using an ATDS;

    b. Whether Defendant can meet its burden of showing it obtained prior express written consent to send each message;

    c. Whether Defendant's conduct was knowing and/or willful;

d. Whether Defendant is liable for damages, and the amount of such damages; and

e. Whether Defendant should be enjoined from such conduct in the future.

43. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

44. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

45. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding via Class Action is Superior and Advisable

46. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

47. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*,

2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

48. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporate them herein by reference.

49. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiffs and the other members of the Classes without their prior express written consent.

50. Each of the aforementioned messages by Defendant constitute a violation of the TCPA.

51. Plaintiffs and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

52. Additionally, Plaintiffs and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

53. Plaintiffs and the Classes are also entitled to and do seek a declaration that:

   a. Defendant violated the TCPA;

   b. Defendant placed telemarketing text messages; and

   c. Defendant placed text messages to the Plaintiffs and the Classes without prior express written consent.

## COUNT II
### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

54. Plaintiffs repeat and reallege the above paragraphs of this Complaint and

incorporate them herein by reference.

55. Defendant knowingly and/or willfully sent multiple automated text messages to cellular telephone numbers belonging to Plaintiffs and the other members of the Classeswithout their prior express consent.

56. Each of the aforementioned messages by Defendant constitute a knowing and/or willful violation of the TCPA.

57. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiffs and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58. Additionally, Plaintiffs and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

59. Plaintiffs and the Classes are also entitled to and do seek a declaration that:
   a. Defendant knowingly and/or willfully violated the TCPA;
   b. Defendant knowingly and/or willfully placed telemarketing text messages to Plaintiffs and the Classes;
   c. Defendant knowingly and/or willfully obtained the telephone numbers of non-customers;
   d. Defendant willfully placed telemarketing text messages to non-customers such as Plaintiffs and the Classes, knowing it did not have prior express written consent to do so; and
   e. It is Defendant's practice and history to place telemarketing text messages to non-customers without their prior express consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs and the Classes the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiffs; and
6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: April 1, 2016

Respectfully submitted,

By: _____
Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
Attorneys for Plaintiffs